ESTATE of William F. STAHL, Deceased, Marion B. Stahl, Executrix, and Marion B. Stahl, Individually, Petitioners-Appellees and Cross-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant and Cross-Appellee.

Marion B. STAHL, Individually and as Executor of the Estate of William F. Stahl, Deceased, Plaintiff-Appellee and Cross-Appellant,

v.

UNITED STATES of America, Defendant-Appellant and Cross-Appellee.

Nos. 18240, 18241, 18398 and 18399.

United States Court of Appeals, Seventh Circuit.

April 9, 1971.

Rehearing Denied May 27, 1971.

Johnnie M. Walters, Asst. Atty. Gen., William A. Friedlander, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., for Commissioner of Internal Revenue.

Warren W. Browning, J. Roy Browning, Joseph M. Solon, Chicago, Ill., for appellees and cross-appellants.

Before SWYGERT, Chief Judge, and CUMMINGS and KERNER, Circuit Judges.

SWYGERT, Chief Judge.

These consolidated cases are appeals and cross-appeals from decisions of the Tax Court[1] and the District Court for the Northern District of Illinois[2] which

---

1. Estate of Stahl, 52 T.C. 591 (1969).

2. Marion B. Stahl, Individually and as Executor of the Estate of William F. Stahl, Deceased v. United States of America, unreported, Case No. 68C–1538, N.D.Ill.,

filed Feb. 10, 1970. The facts and issues in the causes before the Tax Court and the district court were essentially identical, and the claims were divided because the Tax Court could resolve the matter only with regard to calendar years 1961,

essentially relate to the federal income tax consequences of the same transaction. The issues raised are whether payments received by a taxpayer in retirement of notes issued to him by his wholly-owned corporation should be accorded capital gain treatment where the notes were issued in payment for the sale to the corporation by the taxpayer of (1) patents, (2) patent applications, as to which notices of allowance or indications of allowability had been received by the taxpayer prior to the sale and which matured into patents in the hands of the corporation subsequent to the transfer, and (3) patent applications as to which no indication of allowability had been received by the taxpayer prior to the sale. The Tax Court and the district court both held that such payments attributable to the sale of patents were not entitled to capital gain treatment but that those attributable to patent applications, without regard to indications of allowability received prior to sale, were entitled to capital gain treatment. We affirm the decisions of the lower courts as to the proper income tax treatment of those payments deriving from the sale of patents and patent applications which were not the subject of indications of allowability prior to sale, but we reverse the determination of both courts as to the proper treatment of payments deriving from the sale of patent applications as to which indications of allowability had been received prior to sale.

The factual context out of which these disputes arose is fully reported in the opinion of the Tax Court[3] and the following constitutes only so much a summary of the facts as is necessary to understand our disposition of the issues raised on these appeals. Taxpayers, the late William F. Stahl and Marion B. Stahl, were husband and wife and filed joint individual income tax returns for calendar years 1956 through 1963. During all of the years pertinent herein, William F. Stahl owned all of the issued and outstanding stock of Precision Paper Tube Company (hereinafter referred to as "Precision"), an Illinois corporation. On January 3, 1956, Mr. Stahl entered into an agreement with Precision whereby he sold to the corporation all his interest in eight United ed States Patents and five patent applications, receiving therefor corporate notes of Precision in the principal amount of $300,000.00 allocated by the terms of the agreement of sale as follows:

| Patent No. | Price Allocation | |
|---|---|---|
| 2,249,057 | $ 5,000.00 | |
| 2,306,907 | 10,000.00 | |
| 2,343,389 | 15,000.00 | |
| 2,339,432 | 15,000.00 | |
| 2,355,477 | 15,000.00 | |
| 2,368,025 | 15,000.00 | |
| 2,375,704 | 15,000.00 | |
| 2,644,651 | 50,000.00 | |
| Total Price Allocated to Patents | | $140,000.00 |

| Patent Application No. | Price Allocation | |
|---|---|---|
| 274,761 | $50,000.00 | |
| 274,762 | 50,000.00 | |
| 450,931 | 5,000.00 | |
| 454,134 | 5,000.00 | |
| 361,229 | 50,000.00 | |
| Total Price Allocated to Patent Applications | | 160,000.00 |
| Total Price | | $300,000.00 |

Mr. Stahl received fifteen promissory notes of Precision each in the principal amount of $20,000.00, maturing serially at one each year for fifteen years beginning January 3, 1957. The notes were apparently facially negotiable but provided for no interest to the holder until after their respective due dates,

1962 and 1963 (as to which the Commissioner claimed deficiencies) while the district court could consider only taxpayers' claim for a refund for excess tax paid for calendar year 1960 due to other miscalculations which exceeded the alleged deficiency otherwise generated by the reported treatment of the note payments.

3. Estate of Stahl, 52 T.C. 591, 592–597 (1969).

from which dates five percent interest was to be payable. In fact, however, no interest was ever paid on delinquent notes.

Precision was unable to make any payments on the notes prior to 1959, but during the period 1959 through 1963, the following amounts were received by Mr. Stahl in partial payment on the notes:

| Year | Amount Received |
|------|----------------|
| 1959 | $ 8,971.49 |
| 1960 | 25,542.59 |
| 1961 | 29,826.30 |
| 1962 | 31,860.06 |
| 1963 | 51,075.27 |

Taxpayers did not report the transaction with Precision in their joint return for calendar year 1956. The amounts listed above were reported in taxpayers' joint returns for calendar years 1959 through 1963 as long-term capital gains from the sale of patents. After several audits of taxpayers' returns for 1959 through 1963 had been conducted by revenue agents with no change being made with respect to the tax treatment of the above amounts, in 1964 a revenue agent reaudited those years and asserted deficiencies deriving from the erroneous reporting of the receipts in partial payment of Precision's notes. The agent's report stated, "Principal cause of change is treatment of collection on notes, which is deemed to be ordinary income, not as [sic] gain from sale of assets held more than six months." These proceedings followed the inability of the parties to agree on the proper treatment of those receipts.

It is undisputed that the patents and patent applications were capital assets in the hands of Mr. Stahl. Nor is it disputed that, prior to the time of the sale to Precision, Mr. Stahl had received a formal "Notice of Allowance" from the patent office with regard to each of patent applications nos. 274,761 and 274,-762 and had received notification from the patent office that as to patent application no. 361,229 two of its claims "appear[ed] allowable." Moreover, each of the foregoing applications as to which indications of allowability had been received prior to sale subsequently matured into patents in the hands of Precision and were thereafter depreciated. The other two applications had been rejected at the time of the sale, although no. 450,931 ultimately matured into patent no. 2,946,096 on July 26, 1960 after a successful appeal to the Board of Patent Appeals by Precision and subsequent to a notice of allowance issued on December 23, 1959 pursuant to the Board's decision.

■ Taxpayers contend that section 1232(a) (1) of the Internal Revenue Code of 1954 controls the federal income tax consequences of the receipt of payments in partial repayment of the notes received on the sale of the patents.[4] However, as the Tax Court concluded, section 1232 has no application to these facts.[5] The Tax Court observed that it could not have been the intent of Congress to apply section 1232 to corporate notes such as those here involved, stating:

> [T]o accept [taxpayer's] theory would mean that, through the simple expedient of accepting notes in lieu of cash, a taxpayer could always insure the receipt of capital gain from the sale of property. * * * Surely Congress never intended such a bizarre result.[6]

We agree. Ordinarily, the sale of what would otherwise be a capital asset to a

---

4.  Int.Rev.Code of 1954, § 1232(a) (1) provides in pertinent part:

[N]otes * * * which are capital assets in the hands of the taxpayer, and which are issued by any corporation, * * *—amounts received by the holder on retirement of such bonds or other evidences of indebtedness shall be considered as amounts received in exchange therefor. * * *

5.  Estate of Stahl, 52 T.C. 591, 598 (1969).

6.  *Id.*

related taxpayer results in ordinary income treatment of any gain realized thereby.[7] The legislative history of section 1232 reveals no intent of Congress to provide a taxpayer with the windfall of capital gain treatment of such transactions merely because the taxpayer receives corporate notes, rather than cash or other property, from the related purchaser.[8]

The lower courts determined that the federal income tax effects of the 1956 sale of patents are determined by reference to section 1239 of the Internal Revenue Code of 1954.[9] This determination is indisputably correct as is obvious both from the clear language of the statute and from the legislative intent.[10] However, the lower courts applied the ordinary income treatment established by section 1239 only to those payments deriving from the sale of patents, holding that patent applications are not "property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167" as stated in section 1239(b).[11] We believe that such a mechanistic distinction between patents and those patent applications which have been the subject of official indications of allowability is unwarranted and ignores the facts present in these cases.

We hold that patent applications nos. 274,761 and 274,762, as to which official notices of allowance had been received by the transferor prior to the sale, and patent application no. 361,224, as to which a notification that two of its claims "appear[ed] allowable" had been received by the transferor prior to the sale, were sufficiently matured applications as to require that they be treated as patents for purposes of section 1239. In so holding, we are merely recognizing the same facts recognized and acknowledged by William Stahl and Precision as is implicit in the allocation of that portion of the purchase price paid for these applications and the matured patents. We note that Stahl and Precision allocated $50,000.00 each to the purchase of patent applications nos. 274,761, 274,762 and 361,229—an amount greatly exceeding that allocated to the purchase of each of the matured patents save no. 2,644,651 to which $50,000.00 was also allocated. This price allocation was recognition by both the transferor and the transferee that these three applications were virtually certain to mature into depreciable patents, as they did, with the merest of diligence by the transferee in processing the applications after the sale.

---

7. Int.Rev.Code of 1954, § 1239.

8. Estate of Stahl, 52 T.C. 591, 598 n. 3 (1969).

9. Int.Rev.Code of 1954, § 1239 provides in pertinent part:
    (a) Treatment of gain as ordinary income.—In the case of a sale or exchange, directly or indirectly, of property described in subsection (b)—
    * * *
    (2) between an individual and a corporation more than 80 percent in value of the outstanding stock· of which is owned by such individual, his spouse, and his minor children and minor grandchildren;
    any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231.
    (b) Section applicable only to sales or exchanges of depreciable property.—This section shall apply only in the case of a sale or exchange by a transferor of property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167.

10. Int.Rev.Code of 1954, § 1239(a) (2) and (b); H.R.Rep.No.586, 82d Cong., 1st Sess. 26 (1951), reported at 1951–2 Cum.Bull. 357, 376; S.Rep.No.781, 82d Cong., 1st Sess. 69 (1951), reported at 1951–2 Cum.Bull. 458, 507; H.R.Rep. No. 1213, 82d Cong., 1st Sess. 79 (1951), reported at 1951–2 Cum.Bull. 622, 631.

11. Estate of Stahl, 52 T.C. 591, 599–601 (1969).

■ Finally, taxpayers assert that the application of the open transaction doctrine here is unwarranted; ergo, taxation of the amounts received on sale of the patents and patent applications must have been imposed as of 1956, the year of the sale (as to which the statute of limitations has apparently run[12]). The Tax Court rejected this contention stating:

> Payment on the notes was in reality dependent upon the success of the [subsequent] licensee of the patent in using the patents and this success, in turn, depended upon the vagaries of the business involved. In the language of the Supreme Court in Burnet v. Logan, 283 U.S. 404, 413, 51 S.Ct. 550, 75 L.Ed. 741 (1931), "the promise of future money payments (was) wholly contingent upon facts and circumstances not possible to foretell with anything like fair certainty." The Supreme Court went on to hold, as we now hold with respect to the notes here involved, that no fair market value could have been assigned to the promise to pay at the time of its receipt. Indeed in the case before us no payments were in fact made on the notes for almost 3 years following their issuance and it was almost 7 years before the payments became current. Hence no gain or loss could have been computed in the year of receipt and hence the transaction could not have been deemed closed.[13]

We concur in the Tax Court's analysis and conclusion on this issue.

Accordingly, the judgments of the district court and the Tax Court are affirmed in part and reversed in part, and these causes are remanded to the trial courts for recomputation in accordance with the foregoing opinion.

---

12. Int.Rev.Code of 1954, § 6501.

13. Estate of Stahl, 52 T.C. 591, 598 (1969). The district court essentially adopted all conclusions of law of the Tax Court.